UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMBER R. WRIGHT,

    *Plaintiff*,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    *Defendant*.

_____/

CASE NO. 19-10886
DISTRICT JUDGE ARTHUR J. TARNOW
MAGISTRATE JUDGE PATRICIA T. MORRIS

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 15 & 17)

## I. RECOMMENDATION

I suggest that Plaintiff was not afforded a full and fair hearing and thus, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (ECF No. 15) be **GRANTED**, Defendant's Motion (ECF No. 17) be **DENIED**, and that this case be **REMANDED**.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security

1

Act 42 U.S.C. § 401 and 404 *et seq*. (ECF No. 3). The matter is currently before the Court on cross-motions for summary judgment. (ECF Nos. 15, 17).

Plaintiff Amber Wright filed an application for SSI on May 9, 2016, alleging that her disability began on July 1, 2011. (ECF No. 9, PageID.276.) The Commissioner denied her claim on September 13, 2016. (ECF No. 9, PageID.165-166.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on March 28, 2018, before ALJ Richard Horowtiz. (ECF No. 9, PageID.64-168.) At the hearing, Plaintiff—represented by her attorney, Diane Kwitoski—testified, alongside Vocational Expert ("VE") Robert Bond. (*Id.*). The ALJ's written decision, issued June 14, 2018, found Plaintiff not disabled. (ECF No. 9, PageID.44-57.) On August 21, 2018, the Appeals Council denied review, (ECF No. 9, PageID.39-40) and Plaintiff filed for judicial review of the final decision on March 26, 2019. (ECF No. 1).

### B.  Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C. Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the

3

> regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The

4

regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D. ALJ Findings

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled under the Act. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 1, 2011. (ECF No. 9, PageID.46.) At Step Two, the ALJ concluded that the following impairments qualified as severe: "Hashimoto's thyroiditis and encephalopathy; seizure disorder; asthma; mild lumbar degenerative disc disease; migraines; and mental impairments variously described as depression, anxiety and panic disorder." (*Id.*) The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (ECF No. 9, PageID.47-50.) Following this, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations:

> Except: she can occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, and can occasionally balance, stoop, kneel, crouch, or crawl. In addition, she can never work around hazards, such as at unprotected heights, or around moving mechanical parts, can never operate a motor vehicle, and can never work in conditions of humidity and wetness, in extreme heat or cold, in conditions where there are concentrated vibrations, and in conditions where there is concentrated exposure to dust, odors, fumes, or other pulmonary irritants. She is also limited to performing simple, routine and repetitive tasks, but not at a production rate pace, for example, no assembly line or conveyer belt work; she is limited to simple work-related decisions, and she can respond appropriately to occasional interaction with supervisors and coworkers, but with no team or tandem work with coworkers, and no interactions with the general public. Finally, she is limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently, and be adequately and easily explained.

(ECF No. 9, PageID.50-51.). Plaintiff had no past relevant work. (ECF No. 9, PageID.55.) At Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the claimant can perform, and thus found Plaintiff not disabled. (ECF No. 9, PageID.56-57.)

### E. Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations[1] carve the evidence into two categories: "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513 (2016). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a) (2016). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d) (2016). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the

---

[1] Various regulations were amended after the claim was filed. *See, e.g.*, *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01 (January 18, 2017) (effective March 27, 2017). The governing regulations here, however, expressly apply to claims filed before March 27, 2017, like Plaintiff's. See 20 C.F.R. § 404.1527.

6

statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed her claim before March 27, 2017, she is entitled to the benefit of the treating-source rule. Under that rule, certain opinions from her treating physicians can receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(c)(2). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d). Thus, the ALJ "will not give any special significance to the source of an

7

opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must also analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996).[2] Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling

---

[2] Although the Commissioner has rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016), the underlying regulation has remained materially unchanged, *see* 20. C.F.R. § 404.1529(c), and I agree with the courts in this District that have continued to apply SSR 96-7p to cases arising prior to its rescission. *See, e.g.*, *Cooper v. Comm'r of Soc. Sec.*, 2017 WL 3923984, at *3 (E.D. Mich. August 21, 2017), *Rep. & Rec. adopted by* 2017 WL 3891971 (E.D. Mich. Sept. 9, 2017); *Tuttle v. Comm'r of Soc. Sec.*, No. 16-11144, 2017 WL 2928021, at *6 n. 3 (E.D. Mich. June 9, 2017), *Rep. & Rec. adopted by* 2017 WL 2905125 (E.D. Mich. July 7, 2017).

reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

### G. Analysis

Plaintiff contends that the ALJ: (1) did not allow for a full and fair hearing and (2) erred in failing to properly weigh the opinion evidence of record. (ECF No. 15.)

Because I find the first issue to be dispositive, I do not address the second. At the administrative hearing, Plaintiff's mother, Joanna Wright, testified. (ECF No. 9, PageID.134-156.) Before Plaintiff's counsel began to question the witness, the ALJ cautioned, "Now listen, before we go on, I have read the record and I've heard claimant's testimony about all of the things that we've already discussed about the incidents and everything." (ECF No. 9, PageID.135.) Counsel responded, "Okay," and the ALJ continued, "I don't need to go through all that again, obviously," to which counsel again

9

responded, "Okay." (*Id.*) The ALJ further stated, "That's all established as part of the record. I presume you're here to tell me what you observe about the claimant and her alleged disability, and how she functions or doesn't on a daily basis. Why don't we ask those questions that matter?" and the witness and counsel each responded, "Okay" and the ALJ continued, "Rather than hearing again that at the very beginning of the file she had an incident, right?" (ECF No. 9, PageID.136.) After a brief exchange about clarifying Xanax, the ALJ responded, "clarify anything you want. . . . But that would require a specific question," to which counsel responded, "Okay, judge. I'll do my best, thank you." (*Id.*)

After one question establishing where Plaintiff lived, the ALJ interjected, "So the attorney for your daughter's going to ask about questions, I presume, when you're with her, things you've observed, okay?" and the attorney responded, "Right" and the witness, "Okay." (ECF No. 9, PageID.137.) After counsel's first question, "Can you explain to the judge what her memory is like?" the witness started to answer and the ALJ stated, "Well, again, she can't testify as to what the claimant does or doesn't remember. She can testify about her experience of various things herself." (*Id.*) Counsel responded, "Okay," and the ALJ further inserted, "But she's not obviously inside the claimant's head. She cannot testify as to what someone else does or does not remember." (*Id.*) After the witness was allowed to answer one question about how Plaintiff functions when she is told to do things, counsel's second question was whether, "in your experience with her, does she always express what's going on with her?" the ALJ interrupted, "No, you can't ask that. How does she know if she always expresses what's going on? You can testify – this is a court of law. You can testify as to what you've observed. You can't characterize what's going on in her

10

head." (ECF No. 9, PageID.139.) During this time, the witness was acknowledging what the ALJ was saying by several "Mm-hmm[s]." (*Id.*) Several more questions were allowed until the ALJ interceded to clarify that the witness can testify that she observed Plaintiff in the bathroom for long periods of time but could not answer counsel's question regarding how constipation and the need to take stool softeners "impact her." (ECF No. 9, PageID.141.)

After a couple more questions were answered, and the witness was testifying about how Plaintiff could not keep track of the days to take her medications, counsel asked, "This observation, that she doesn't seem to understand, is that something you observe in her?" was interrupted by the ALJ saying, "Well, again, no, no, no. You can't." (ECF No. 9, PageID.144.) Counsel, stated, "Your Honor" and the ALJ elaborated, "You can't testify about what she understands, or doesn't understand. Because again, you're not in her head. She's already testified as to what she understands or doesn't understand. You can testify about what you observe, but witnesses can't give testimony about what they think is going on in someone else's head." (*Id.*) The witness then asked, "Can I tell you something I do with her, though, at times?" and the ALJ responded, "Anything you do is fine." (ECF No. 9, PageID.144-45.) After the witness described how she helps Plaintiff by correcting what Plaintiff says, the ALJ inserted, "Okay. What else, counsel?" (ECF No. 9, PageID.145.)

Counsel began asking questions of how Plaintiff appears when she returns from trying to work and after two brief answers, the ALJ interjected, "This is cumulative. She's already told me about all of this," to which the witness responded, "I'm just saying, that's one of the reasons why she would not be able to go to work" to which the ALJ commented,

11

"I understand, but we have a time issue." (ECF No. 9, PageID.146.) After the witness responded, "Okay," the ALJ added, "So let's try to ask the witness about things that are not already part of the record." (*Id.*) Counsel explained, "I was trying to corroborate it, your honor, so it's more testimony to support her [Plaintiff's] credibility. So that's what I'm trying to do. But I'm hearing what you're telling me to do, so I'll do it, but I object." (*Id.*)

After several questions regarding Xanax, the ALJ again prompted, "Anything else, counsel? We still have a vocational expert to testify. Anything else at all?" (ECF No. 9, PageID.149.) But when counsel asked whether, in her observation, Plaintiff was able to fill out the social security application forms normally, the ALJ interrupted, "No, no, no. That's a leading question" to which counsel continued, "no, how is she able to do it?" (*Id.*) The ALJ stopped counsel and said, "Wait a second. Hold it, counsel. That speaks for itself, and we've already had her [Plaintiff] testify about what she can and can't do. We're not going to do this now. Anything else?" to which counsel urged, "Okay, but the mother – it's the mother. I want her to explain how she does it." (*Id.*) The ALJ retorted, "She did. I get it, I've heard it." (*Id.*) After counsel simply responded, "Okay" the ALJ stated, "But you're not going to impeach this witness with her own function report." (ECF No. 9, PageID.149-150.) To which counsel argued, "I'm not impeaching her. The function report doesn't," and the ALJ interrupted, "And we're not rewriting the function report, either" while counsel tried to speak, "Judge, I" and the ALJ snapped, "It says what it says, I'm not allowing it. Let's move on." (ECF No. 9, PageID.150.) Counsel was only able to ask one question about whether Plaintiff drives before the ALJ repeated his prodding he made

12

before the question was asked, "Okay. Anything else, counsel? We've already got her [Plaintiff's] firsthand testimony about this," after which counsel again acquiesced, "Okay, judge" prompting the ALJ to reiterate, "We must move on." (*Id.*)

After counsel noted for the record that she would move on because the ALJ wanted her to, the ALJ said, "We have to move on. I have two more hearings[] [t]his is a two-hour hearing, already. We just can't keep doing this." (ECF No. 9, PageID.151.) Counsel reminded the ALJ that "I offered to come back, judge," to which the ALJ responded, "Well, we're not coming back. There's no slot for us to come back." (*Id.*) The ALJ again asked if there was anything else and counsel responded, "But - - No, your honor, thank you," the ALJ chided, "No, no. No speeches, counsel, we must move on, I have a vocational expert that still hasn't testified after two hours." (*Id.*) Counsel pleaded, "You honor, I realize that you're frustrated with me, that's clear on the record," to which the ALJ said, "I'm not frustrated with you, but I have an obligation to move my docket," to which counsel correctly noted, "I have an obligation," to which the ALJ countered, "And I've given you almost an extra hour." (*Id.*) Counsel preserved her objection on the record by saying, "Your Honor, based on – it is your courtroom, so therefore you're entitled to tell me what to do, I get that. But I am going to make sure it's on the record that I am under the impression that we sometimes need corroborating testimony. If you find the claimant not credible, that will go to the credibility determination. Because I have the claimant here, mother, to give more corroborating testimony. You're saying I'm repeating everything. I believe it's corroboration." (ECF No. 9, PageID.152.) The ALJ disagreed saying, "We don't need cumulative evidence," to which counsel tried to explain, "I don't believe it is cumulative.

13

It's a different witness, giving a different impression. However," after which the ALJ cut in quipping, "And by the way, pursuant to rulings and regulations, we don't make credibility findings anymore. So none of this is necessary." (*Id.*) Counsel contended that the witness "has the right to talk about her [Plaintiff]" to which the ALJ stated, "And she has. But you have an obligation to ask non-leading, specific questions" and that "sometimes you've been testifying, sometimes you're asking very leading questions, and I have an obligation to keep a clean record." (ECF No. 9, PageID.153.) Counsel noted that "[t]his is a summary proceeding, and leading is allowed. Rules of evidence aren't strictly construed, so that I can at times, to make the case move faster, ask somewhat leading questions." (*Id.*)

The ALJ asked if there were any other questions and counsel responded, "No, you won't let me clarify her report, so that's fine," and the ALJ replied, "What report? No, I'm not going to let you impeach her report," and after counsel stated she was not impeaching the witness, the ALJ surmised, "It says what it says." (*Id.*) When counsel proffered that the witness "can explain what she meant," the ALJ concluded, "No, she can't explain what she meant, because it speaks for itself, and she's testified already." (ECF No. 9, PageID.153-154.) The ALJ repeated, "I'm not allowing that" and "[t]he report speaks for itself." (ECF No. 9, PageID.154.)

First, the fact that the new regulations have omitted the label "credibility" of the Plaintiff does not mean that a plaintiff's credibility is no longer an issue. Although the Commissioner has rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016), the underlying regulation has remained materially unchanged, *see* 20. C.F.R. § 404.1529(c).

14

In addition, "Congress specifically exempted Social Security disability proceedings from the strictures of the Federal Rules of Evidence, allowing ALJs to consider a broader range of potentially relevant information than would be permissible in an ordinary court of law. 42 U.S.C. § 405(b)(1)." *Biestek Comm'r of Soc. Sec.*, 880 F.3d 778, 790 (6th Cir. 2017). Therefore, the ALJ's contention that his hearing room is a "court of law" may have been an expanded view but more importantly, his attempt at strict adherence to the evidentiary rules was completely unnecessary.

Ironically, the ALJ's constant interruptions, objections based on his desire to enforce rules of evidence that do not apply to the hearing and his erroneous conclusion that credibility is no longer important did more to lengthen the hearing than counsel's attempted questioning.

I note at the outset that research has not revealed a case whose facts mirror those of the instant case; however, I believe guidance on pertinent general principles will suffice. Before examining whether the ALJ's decision is based on substantial evidence, the court "must first be satisfied that the claimant has had a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Cruz v. Sullivan*, 912 F.2d 8, 11 (2nd Cir. 1990). "A[] factor to consider in determining whether a plaintiff was given a fair hearing is the number of witnesses[.]" *Mann v. Chater*, 1997 WL 363592, at *5 (S.D. N.Y. June 30, 1997). I contend that this should also include the quality of the presentation as well as the quantity.

I agree with Defendant that the circumstances of this case differ from others where reference to the number of pages in the transcript raises questions as to the fullness of the

hearing. *Cf. Lashley v. Sec'y of Heath and Human Servs.*, 708 F.2d 1048 , 1051-52 (6th Cir. 1983) (hearing lasting only 25 minutes, resulting in an 11-page transcript). Here, the pages are more numerous, but Plaintiff was constricted nonetheless. The ALJ thwarted counsel through the entirety of Joanna Wright's testimony based on his overinflated view, impatience, misconceptions regarding the applicable law, and elevation of his docket concerns over the Plaintiff's right to a full and fair hearing.

As noted in a respected treatise on social security cases, "Although no published opinion deals directly with an ALJ's interruption of a claimant, the issue is one which advocates should raise in federal court, since it goes to both the heart of the ALJ's duty to develop the record and the claimant's due process right to be heard." Carolyn Kubitschek & Jon C. Dubin, *Social Security Disability Law and Procedure in Federal Court*, § 6:14s (2018). I suggest that the same is true with respect to Plain tiff's witnesses.

I further suggest that Plaintiff was prejudiced by the ALJ's refusal to let Plaintiff 's counsel present corroborating evidence regarding her symptoms and effects they had on her abilities since the issue of whether a Plaintiff's description of her symptoms and the effects they have on her functional capacity remains a central issue in every social security case, despite the elimination of the label "credibility." *Cooper v. Comm'r of Soc. Sec.*, 2017 WL 3923984, at *3 (E.D. Mich. August 21, 2017), *Rep. & Rec. adopted by* 2017 WL 3891971 (E.D. Mich. Sept. 9, 2017).

Accordingly, I find Plaintiff's right to a full and fair hearing was not satisfied on this record and that Plaintiff's case should eb remanded on this ground alone.

### F. Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 15) be **GRANTED**, the Commissioner's Motion (ECF No. 17) be **DENIED**, and that this case be **REMANDED**.

### III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ.

P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  January 14, 2020              S/ PATRICIA T. MORRIS
                                     Patricia T. Morris
                                     United States Magistrate Judge

### CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: January 14, 2020               By s/Kristen Castaneda
                                     Case Manager